## Clemmons v. Commonwealth.

(Decided December 16, 1927.)

### Appeal from Breathitt Circuit Court.

1. Conspiracy.—In prosecution for conspiracy to burn dwelling house, where conspirators exonerated defendant from participation in crime, evidence was held sufficient to require submission of case to jury.

2. Criminal Law.—In prosecution for conspiring to burn dwelling house, where defendant was required to admit that he had before been indicted for burning storehouse, it was held that such evidence was admissible to show animus on part of defendant and to show motive to conspire to burn dwelling house.

3. Witnesses.—In prosecution for conspiring to burn dwelling house, where defendant contended court erred in declining to compel witness to answer question, "Have you had any promise that they wouldn't try Ike if you testified against Elihu," it was held that the question was too broad, as promise would have been worthless and would not have influenced witness.

4. Criminal Law.—In prosecution for burning dwelling, that witnesses were permitted to testify that, night after they had been before grand jury, their house was burned, where they had already testified as to efforts of defendant to keep them from going before grand jury, there being evidence connecting defend-

ant with burning of their home, held prejudicial, since only effect
was to influence minds of jurors.

A. F. BYRD for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellant was indicted for the offense of burning the dwelling house of H. C. Clemmons. In the first count of the indictment the appellant was charged with setting fire to the house himself, and in the second count with conspiring with certain named conspirators to do the burning, in pursuance of which conspiracy two of the named conspirators did set fire to the mentioned house. The court submitted the question of appellant's guilt under the second count only, and, from a judgment of conviction on that count, appellant appeals.

He claims first that he was entitled to a peremptory instruction. It is conceded that appellant's stepson, John Clemmons, and Ike Prater actually set fire to the house of H. C. Clemmons. Appellant at the time the house was fired was at his home a considerable distance away. John Clemmons and Ike Prater exonerate appellant of all participation in the crime. All that the commonwealth has on which to base a conviction of appellant is the testimony of Polly Prater and the evidence of several witnesses concerning the activities of appellant after the fire. Polly Prater testified that a few days before the fire she heard the appellant, Ted Clemmons, and John Clemmons talking together, and that appellant said "John burnt it; he would swear him out; and said it ought to have been burnt and Henry Clemmons right in it." Her testimony so far indicates that the house had already been burnt, but she says that this conversation took place before the house burnt. Later she stated that, after the fire, she heard the appellant say that John had burnt the house, but that he would swear John out of it, and that the house ought to have been burnt with Henry Clemmons in it. We believe she was probably confused at this stage of the examination between what she heard before and after the fire, for on cross-examination, when asked about the conversation before the fire, she said that the appellant "said if John burnt it, he would swear him out; he wished Henry Clemmons was right in the

middle of it.'' John Clemmons in this conversation said, according to this witness, that the house ought to be burnt. Appellant, John Clemmons, who admits he did the burning, and Ted Clemmons, all deny that any such conversation as Polly Prater claims took place.

After the fire, appellant was very active in the effort to keep the witnesses from going before the grand jury. While he denies these activities, the evidence overwhelmingly establishes that he did all he could to prevent the witnesses testifying before the grand jury. His counsel suggests in his brief that appellant was, in this matter, trying to shield his stepson; but appellant did not attempt to justify his conduct on that score. He denied that he had done anything in this regard. While the evidence on which the commonwealth relies and which we have outlined above is skimpy, yet it was sufficient to carry that case to the jury which was submitted to it. The testimony of Polly Prater tends to establish that this burning was discussed before the house was fired, and appellant's activities after the fire, denied by him and unexplained in the evidence, are not consistent with entire innocence on his part. The lower court did not err in overruling appellant's motion for a peremptory instruction.

Appellant claims next that the court erred in the reception and rejection of testimony. He says that the court erred in requiring him to admit that he had before the fire been indicted for burning a storehouse of Henry Clemmons. The evidence was admissible to show animus on the part of the appellant and a motive for him to enter into a conspiracy, if he did, to burn this dwelling house of Henry Clemmons. He says that the court erred in declining to compel the witness Polly Prater to answer the question, ''Have you had any promise that they wouldn't try Ike if you testified against Elihu?'' Ike was Polly Prater's husband and was jointly indicted with Elihu, the appellant, for this house burning. The court told the witness that she need not answer this question, as it covered too much territory. Of course the court was correct. Had the appellant confined the question to a promise made by some one who could have controlled the trial of Ike, a different proposition would be presented. But as it stood, the question was too broad, as the promise might have been made by some one whose promise would have been worthless and known to be worthless by Polly Prater, and hence would have been of such character as not to have influenced her in any way.

Appellant also says that the court erred in permitting the Praters, Ike and Polly, to testify that the night after they had been before the grand jury in this case, their house was burned. They had already testified about the efforts appellant had made to keep them from going before the grand jury. There was no evidence connecting the appellant with the burning of the Prater home. Hence this evidence of the Praters about their house burning down the night after they had been before the grand jury should have been excluded. Its only effect was to instill and influence suspicions in the minds of the jurors that, as appellant had been so active in trying to prevent the Praters from going before the grand jury, he must have burned their house in his resentment, and that he did this because he was conscious of his guilt in this case, and that, if he would burn the Prater house, he probably burned this house of Henry Clemmons. This was a very close case on the evidence and the admission of this testimony in such a state of case was prejudicial. For this reason, the judgment will have to be reversed.

The other errors claimed as to the reception and rejection of testimony are very minor in character and are without merit. The complained of argument of the commonwealth's attorney will probably not occur in the retrial of this case, for which reason we do not pass upon that at this time.

Judgment reversed, with instructions to grant the appellant a new trial in conformity with this opinion.